915 P.2d 1080 (1996)
129 Wash.2d 303
The STATE of Washington, Petitioner,
v.
Herbert David HARDESTY, Respondent.
No. 63229-4.
Supreme Court of Washington, En Banc.
Argued March 7, 1996.
Decided May 9, 1996.
*1081 Richard L. Weber, Okanogan County Prosecutor, Okanogan, for petitioner.
Scot D. Stuart, Okanogan, for respondent.
TALMADGE, Justice.
Herbert D. Hardesty (Hardesty) allegedly defrauded the trial court by failing to accurately relate his criminal history, thereby obtaining a more favorable sentence. He *1082 fully served the sentence, and now claims the double jeopardy clause of the Fifth Amendment to the United States Constitution prevents his resentencing after the State brought the alleged fraud to the attention of the trial court. The Court of Appeals agreed, holding double jeopardy forbids the vacation of a "facially valid" sentence the defendant has fully served, even though the defendant procured the "facially valid" sentence by fraud. State v. Hardesty, 78 Wash. App. 593, 599, 897 P.2d 1282 (1995).
Where a defendant defrauds a trial court in sentencing, a defendant has no expectation of finality in the sentence for purposes of the double jeopardy clause, particularly where our criminal rules provide a procedure to set aside a sentence for fraud. CrR 7.8(b)(3). However, because the State here failed to meet the requirements of CrR 7.8 to set aside the sentence for fraud, we vacate the trial court's Amended Judgment and Sentence.

ISSUES
1. Is double jeopardy violated if a defendant is resentenced after a sentence is fully served, if the defendant defrauded the trial court to obtain the original sentence?
2. Did the trial court properly conclude Hardesty defrauded the trial court here?

FACTS
On September 27, 1991, in the Okanogan County Superior Court, Hardesty pleaded guilty to second degree burglary of a residence, and, in return, the State dropped a theft charge. The plea agreement contained an agreed criminal history revealing two prior felonies. Hardesty's resulting offender score was 4, with a sentence range of 12 to 16 months. Based on his plea and criminal history, the trial court found Hardesty guilty and sentenced him to 14 months. After serving approximately nine months, Hardesty was released. He was not under community supervision.
In the 1991 agreement, Hardesty and the State certified the prosecutor's understanding of Hardesty's complete criminal history was as follows:

Crime Sentencing Date Date of Crime
Burglary in the second degree 5 Jan 77 24 Apr 76
Burglary in the second degree 26 Feb 88 01 Dec 82

In 1993, the State learned Hardesty's true criminal history included four felonies rather than just two:

Crime Sentencing Date Date of Crime
Burglary in the second degree 5 Jan 77 24 Apr 76
Burglary in the second degree 17 Nov 81 21 Sep 81
Attempt possess a controlled 21 Apr 86 24 Apr 85
sub./marijuana
Possession of stolen property 10 Aug 88 30 Jan 88

Based upon four prior felonies, Hardesty's proper offender score in 1991 was 6, with a range of 22 to 29 months.
On May 21, 1993, the State filed a "Motion for Resentencing Pursuant to RCW 9.94A.100," which contained only a brief memorandum of authorities. The State asked the trial court to order a hearing, and requested a resentencing of Hardesty to 29 months' imprisonment based upon his additional felony convictions. The State's motion did not mention fraud, and did not meet the procedural requirements of CrR 7.8(c). On June 28, 1993, Hardesty's counsel filed a memorandum opposing resentencing, citing the Fifth Amendment double jeopardy clause and requesting specific performance of the *1083 plea agreement. Neither the State nor Hardesty filed an affidavit in support of their memoranda.
At a June 30, 1993 hearing on its motion, the State explained the prosecutor's office in 1991 had known only of the first two felony convictions because Nevada officials had not entered the others on a national computer data base. The prosecutor's office learned of the additional felonies fortuitously in 1993 when Hardesty was arrested and convicted of second degree child molestation, and the prosecutor's office asked Nevada officials for copies of his prior felony convictions. The State alleged fraud for the first time at the hearing, arguing the double jeopardy clause did not prevent resentencing because Hardesty had defrauded the court in 1991 by not disclosing his two additional felony convictions. Hardesty's counsel argued returning Hardesty to prison violated double jeopardy. However, Hardesty's counsel did not present any evidence negating the elements of the alleged fraud. The trial court granted the State's motion, orally finding Hardesty had committed fraud.
At this point, Hardesty asked to speak. He insisted any error in the 1991 criminal history was mutual, and denied intentionally or fraudulently misstating his criminal history. He explained he had been "rushed" in 1991 and had only had a few minutes to review the plea agreement. He also argued the 1991 criminal history revealed three felonies, not just two, because of the oddities of the dates on the second line (a 1982 crime for which he was sentenced in 1988). He thought the attempted possession of marijuana was only a misdemeanor. However, Hardesty does not now contest the fact he had four felony convictions prior to 1991.
The trial court adhered to its finding of fraud, and orally sentenced Hardesty to 22 months, with credit for time served. In sentencing Hardesty to the low end of the standard range, the trial court indicated it was giving Hardesty "the benefit of the doubt." Report of Proceedings (June 30, 1993), at 38. The trial court then made written findings and conclusions in this form:
The Court heard arguments of counsel and a statement from the Defendant then made the following findings of fact:
1. The Defendant pled guilty to the crime of Burglary in the Second Degree on September 27, 1991.
2. That the criminal history listed on the Plea Agreement showed two prior felony convictions for burglary in the second degree.
3. That the Defendant certified his criminal history as being accurate as indicated by his signature on the Prosecutor's Statement of Criminal History.
4. That there were two more felony convictions that the Defendant failed to disclose at the time of his plea.
5. That the Defendant's certification of the accuracy of this criminal history was a fraud upon the court.
State's Br. of Resp't, App. C.[1]
The trial court entered an Amended Judgment and Sentence dated July 1, 1993, sentencing Hardesty to 22 months, consecutive to a 47-month sentence on the child molestation charge. Division Three of the Court of Appeals reversed. Acknowledging one who lies to the trial court to obtain an erroneously lenient sentence skews the plea bargain system and "cheats" society, the Court of Appeals nonetheless held the double jeopardy clause does not allow a "facially valid judgment to be vacated after an accused has fully served a facially valid sentence," even where there is fraud or perjury. Hardesty, 78 Wash.App. at 599, 897 P.2d 1282. We granted review.

ANALYSIS
A. The Double Jeopardy Clause
The double jeopardy clause of the Fifth Amendment to the U.S. Constitution protects against a second prosecution for the same offense, after acquittal, conviction, or a *1084 reversal for lack of sufficient evidence.[2]North Carolina v. Pearce, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969). In these situations, a second attempt by the State to establish the defendant's guilt is unequivocally prohibited. State v. Pascal, 108 Wash.2d 125, 132, 736 P.2d 1065 (1987). The State, with all its resources, should not be allowed to repeatedly subject a person to the ordeal of trial, or by this method to enhance the possibility it will obtain the conviction of an innocent person. Green v. United States, 355 U.S. 184, 187-88, 78 S.Ct. 221, 223, 2 L.Ed.2d 199, 61 A.L.R.2d 1119 (1957); Pascal, 108 Wash.2d at 132, 736 P.2d 1065.
In the sentencing context, where a trial court resentences a defendant because the original sentence was erroneous, the double jeopardy analysis has evolved in recent years. Prior to United States v. DiFrancesco, 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980), a number of cases had held double jeopardy applies just as strongly to sentencing as to the verdict in a trial of guilt or innocence. These cases viewed a sentencing determination as an "acquittal" as to any possible greater sentence, and held jeopardy attached to the greater sentence, preventing a later increase in the original sentence. United States v. Lundien, 769 F.2d 981, 985 (4th Cir.1985), cert. denied, 474 U.S. 1064, 106 S.Ct. 815, 88 L.Ed.2d 789 (1986).
DiFrancesco rejected this conception of double jeopardy, finding the distinction between a sentencing determination and a trial of guilt or innocence is fundamental, and a sentence does not have the same quality of finality as an acquittal. DiFrancesco, 449 U.S. at 132-36, 101 S.Ct. at 434-37. Accordingly, the double jeopardy clause does not generally prohibit review of an allegedly erroneous sentence. Id. Following DiFrancesco, there is no per se rule against increasing an allegedly erroneous sentence.
The DiFrancesco Court did not eliminate the prohibition against multiple punishments for the same offense, DiFrancesco, 449 U.S. at 129, 101 S.Ct. at 433, and indicated three ways in which the double jeopardy clause would prevent a second attempt by the State to increase a sentence. First, the double jeopardy clause continues to prohibit increasing a correct sentence. DiFrancesco, 449 U.S. at 138-39, 101 S.Ct. at 438-39; Ex parte Lange, 85 U.S. (18 Wall.) 163, 175, 21 L.Ed. 872 (1873); State ex rel. Sharf v. Municipal Court, 56 Wash.2d 589, 354 P.2d 692 (1960). Hardesty does not benefit from this rule, since his 1991 sentence concededly was not correct.
Second, DiFrancesco indicates the double jeopardy clause will prevent resentencing if the original sentencing proceeding was more like a trial than an ordinary sentencing proceeding. In DiFrancesco, the Court upheld provisions of a federal racketeering statute which allow appellate review of the sentencing determination of whether the defendant is a "dangerous special offender." 18 U.S.C.A. § 3575 (Supp.1996). The Court emphasized the sentencing and review process involved were limited, and unlike a trial. DiFrancesco, 449 U.S. at 136-37, 101 S.Ct. at 437.
Certain sentencing proceedings may share the characteristics of a trial for purposes of double jeopardy. A capital punishment penalty proceeding exhibiting the hallmarks of a trial implicates the same double jeopardy protection as a trial, barring any second attempt by the State to impose a greater sentence following "acquittal" of the death penalty or reversal for lack of evidence. Bullington v. Missouri, 451 U.S. 430, 438-39, 101 S.Ct. 1852, 1857-58, 68 L.Ed.2d 270 (1981); see also State v. Hennings, 100 *1085 Wash.2d 379, 670 P.2d 256 (1983) (Washington's former habitual criminal determination, RCW 9.92.090, involves proof beyond reasonable doubt and limited discretion, and enjoys the same double jeopardy protection as a trial).
Hardesty's 1991 sentencing hearing under the 1981 Sentencing Reform Act (SRA), was not a special sentencing proceeding akin to a trial. The double jeopardy clause did not flatly bar any later attempt to increase his sentence. State v. Strauss, 119 Wash.2d 401, 410-12, 832 P.2d 78 (1992) (double jeopardy does not apply to noncapital SRA sentencing proceedings).
Third, the double jeopardy clause has a limited role even with respect to ordinary sentencing proceedings like Hardesty's 1991 hearing. In an ordinary sentencing proceeding to correct an erroneous sentence, the analytical touchstone for double jeopardy is the defendant's legitimate expectation of finality in the sentence, which may be influenced by many factors such as the completion of the sentence, the passage of time, the pendency of an appeal or review of the sentencing determination, or the defendant's misconduct in obtaining the sentence.
In DiFrancesco, the Court held the defendant lacked an expectation of finality in the sentence because he was charged with knowledge the racketeering statute provided for review of the sentencing determination, and the government had promptly sought review within the relevant statutory period. DiFrancesco, 449 U.S. at 136-39, 101 S.Ct. at 437-39.
The case law following DiFrancesco indicates the defendant acquires a legitimate expectation of finality in a sentence, substantially or fully served, unless the defendant was on notice the sentence might be modified, due to either a pending appeal or the defendant's own fraud in obtaining the erroneous sentence. In United States v. Jones, 722 F.2d 632, 638 (11th Cir.1983), the court stated a defendant has an expectation of finality in the sentence once she or he begins to serve it, unless a review process is employed or the defendant "intentionally deceive[d] the sentencing authority or thwart[ed] the sentencing process." See United States v. Daddino, 5 F.3d 262, 265 (7th Cir.1993) (legitimate expectation of finality in completed sentence); United States v. Rico, 902 F.2d 1065, 1068 (2d Cir.) (no expectation of finality where sentence is served but time for review has not expired), cert. denied, 498 U.S. 943, 111 S.Ct. 352, 112 L.Ed.2d 316 (1990); United States v. Fogel, 829 F.2d 77, 87 (D.C.Cir.1987); United States v. Earley, 816 F.2d 1428, 1433 (10th Cir.1987) (court could not correct sentence five months after rendering it); United States v. Arrellano-Rios, 799 F.2d 520, 524 (9th Cir.1986) (expectation of finality arises upon completion of sentence); State v. Gaddy, 110 N.M. 120, 792 P.2d 1163 (Ct.App.N.M.1990); State v. Carvajal, 147 Ariz. 307, 310, 709 P.2d 1366, 1369 (App.1985) (majority of cases holds the double jeopardy clause does not bar subsequent resentencing "where a defendant through fraud or collusion actively engineered an inadequate sentence"); but see Higdon v. Cooper, 247 Ga. 746, 279 S.E.2d 451 (1981) (double jeopardy clause bars resentencing even if defendant engaged in conscious deceit). A defendant who creates the error through fraud should not be heard to claim an expectation of finality in the sentence the defendant knows is erroneous. United States v. Bishop, 774 F.2d 771, 776 (7th Cir.1985).
Other cases find a similar barrier to increasing a served sentence if the defendant is innocent of wrongdoing in obtaining the sentence, based upon the due process clause of the Fourteenth Amendment to the U.S. Constitution. For example, in DeWitt v. Ventetoulo, 6 F.3d 32 (1st Cir.1993), cert. denied, ___ U.S. ___, 114 S.Ct. 1542, 128 L.Ed.2d 193 (1994), the appellate court held once the defendant was paroled and rejoined the community, and had been innocent of wrongdoing or knowledge of the trial court's error in earlier suspending most of his life sentence, the trial court could not re-impose the life sentence and hale the defendant back to prison. See also Lundien, 769 F.2d at 987; Breest v. Helgemoe, 579 F.2d 95, 101 (1st Cir.), cert. denied, 439 U.S. 933, 99 S.Ct. 327, 58 L.Ed.2d 329 (1978).
Although the State claims any erroneous sentence later may be increased, even if the *1086 sentence is served or even absent fraud, citing Pascal, Washington law is substantially in accord with the federal authorities. In Pascal, the State appealed an exceptionally short manslaughter sentence, under the SRA provisions for review of an exceptional sentence. By the time this Court reviewed (and upheld) the sentence, Pascal had served it. We indicated double jeopardy "is inapplicable where an invalid sentence has been fully served." 108 Wash.2d at 134, 736 P.2d 1065 (emphasis added). See also State v. Freitag, 127 Wash.2d 141, 145, 896 P.2d 1254, amended by ___ Wash. ___, 905 P.2d 355 (1995) (remand to correct "erroneously imposed" sentence does not violate the double jeopardy clause); State v. Pringle, 83 Wash.2d 188, 194, 517 P.2d 192 (1973) (remand for entry of mandatory deadly weapon finding and increase in "erroneous and invalid sentence" sentence does not violate the double jeopardy clause).
In Pascal, Freitag and Pringle, as in DiFrancesco, the defendants could not have had any expectation of finality because they were on notice the sentences might be overturned on review and ultimately increased. In Pascal, the State's challenge to the sentence was made in timely fashion under the SRA. Similarly, in Freitag, 127 Wash.2d at 145, 896 P.2d 1254, we emphasized the State's immediate appeal of the erroneous sentence put Freitag on notice it was not final. In Pringle, the State initiated a review process within 13 days of sentencing.
While the State now contends Hardesty did not have a reasonable expectation of finality for purposes of double jeopardy if his sentence was merely erroneous, rather than fraudulent, and he fully served it, this was not the basis for the trial court's decision. Here the State did not appeal the sentence, Hardesty fully served it, and a period of months elapsed after the completion of the sentence. Under these facts, if Hardesty's more favorable sentence was merely the product of an error, and not his fraud upon the trial court, Hardesty would have a reasonable expectation of finality in the sentence for purposes of double jeopardy.
Hardesty argues any erroneous sentence fully served may not subsequently be increased, even if there is fraud. The Court of Appeals similarly held the double jeopardy clause does not allow an erroneous but "facially valid" sentence to be increased, once it is served, even if the defendant obtained it by deceiving the court. Hardesty, 78 Wash. App. at 599, 897 P.2d 1282. The Court of Appeals sought to distinguish this case from Pascal on the ground Hardesty's sentence "although fraudulent, was legal." Hardesty, 78 Wash.App. at 600, 897 P.2d 1282. Hardesty's sentence was legal only in the sense imprisoning him was not a violation of his rights; it clearly was an erroneous, illegal or invalid sentence, as those terms are used in DiFrancesco and other cases.
Under Hardesty's and the Court of Appeal's view, a defendant obtains a safe harbor after completing a sentence obtained by fraud. This would invite defendants to be less than candid with trial courts in the hope of receiving a favorably erroneous sentence because the State and the courts might fail to detect inaccuracies in the defendant's criminal history. We decline to adopt such an analysis.
What matters for purposes of double jeopardy is not the legality or illegality of the sentence under the sentencing statute, but the defendant's expectation of finality. A defendant ordinarily has no expectation of finality in a fraudulently obtained sentence, because one who commits fraud is, by definition, aware of such misconduct. Under CrR 7.8(b), a judgment may be modified or vacated on grounds of fraud, misrepresentation or other party misconduct within a reasonable time, even if more than one year after the judgment is entered. Defendants are charged with knowledge of a statutory period in which review of a sentence may be sought. DiFrancesco, 449 U.S. at 136-37, 101 S.Ct. at 437. Similarly, defendants who obtain a sentence by fraud should be deemed on notice the sentence may be increased within the period authorized under CrR 7.8.[3]
*1087 Hardesty also claims the court lost jurisdiction to resentence him. A court has jurisdiction to amend a judgment to correct an erroneous sentence, where justice requires, under CrR 7.8. State v. Shove, 113 Wash.2d 83, 88, 776 P.2d 132 (1989). See also In re Carle, 93 Wash.2d 31, 604 P.2d 1293 (1980); Pringle, 83 Wash.2d at 193, 517 P.2d 192; McNutt v. Delmore, 47 Wash.2d 563, 565, 288 P.2d 848 (1955), cert. denied, 350 U.S. 1002, 76 S.Ct. 550, 100 L.Ed. 866 (1956). In Sharf, 56 Wash.2d at 592, 354 P.2d 692, we held fulfillment of a correct sentence divested the court of the power to impose a greater sentence. Sharf does not control where the sentence is erroneous.
Here, the motion to increase the sentence came within a month of discovery of the alleged fraud and two years of the original sentencing. Clearly, the motion was brought within a reasonable time under CrR 7.8, and the trial court had jurisdiction to hear it. Hardesty also claims he had an expectation of finality upon the expiration of the 30-day time period for an appeal. RAP 5.2. However, if any period is relevant, it is the period authorized by CrR 7.8.[4]
Although Hardesty served his sentence and rejoined civil society for approximately a year before the State sought to increase the sentence and return Hardesty to prison, we hold Hardesty had no expectation of finality in a sentence obtained by fraud some two years earlier. The State may proceed under CrR 7.8 to seek vacation of a judgment procured by fraud. Defendants who commit fraud are on notice of this criminal rule. If fraud is proved in accordance with the procedures of CrR 7.8, double jeopardy is not violated if a defendant's fraudulently procured sentence, though fully served, is vacated and the defendant is properly sentenced.
B. The Trial Court's Determination on Fraud
Hardesty challenges the adequacy of the trial court's findings and conclusion he defrauded the trial court, and asserts the State failed to meet its burden of proof and the trial court failed to conduct a required hearing. Neither party articulated the relevant elements, burden of proof or procedures for modification of the judgment on grounds of fraud.
The State's motion for an increase in Hardesty's sentence ostensibly was pursuant to RCW 9.94A.100. However, RCW 9.94A.100 merely requires the defendant and prosecutor to provide their understanding of the defendant's criminal history to the trial court. Disputes on criminal history are decided at a sentencing hearing. RCW 9.94A.100. RCW 9.94A.100 does not authorize modification of a final judgment and sentence.
CrR 7.8 authorized the trial court to modify the judgment and sentence here based on fraud. Upon a party's motion, a court may vacate or modify a final judgment for reasons of: "Fraud ... misrepresentation, or other misconduct of an adverse party." CrR 7.8(b)(3). The procedure for such a motion is as follows:
(1) Motion. Application shall be made by motion stating the grounds upon which relief is asked, and supported by affidavits setting forth a concise statement of the facts or errors upon which the motion is based.
(2) Initial Consideration. The court may deny the motion without a hearing if the facts alleged in the affidavits do not establish grounds for relief. The court may transfer a motion to the Court of Appeals for consideration as a personal restraint petition if such transfer would serve the ends of justice. Otherwise, the court shall enter an order fixing a time and place for hearing and directing the adverse party to appear and show cause why the relief asked for should not be granted.
CrR 7.8(c).
A trial court's decision on a motion to vacate a judgment is reviewed on an abuse *1088 of discretion standard. In re Adamec, 100 Wash.2d 166, 173, 667 P.2d 1085 (1983); State v. Scott, 92 Wash.2d 209, 212-13, 595 P.2d 549 (1979); State v. Hall, 32 Wash.App. 108, 111, 645 P.2d 1143, review denied, 97 Wash.2d 1037 (1982). The motion must be supported by an affidavit setting forth a concise statement of the facts or errors upon which the motion is based. State v. Gallagher, 46 Wash.2d 570, 573, 283 P.2d 140 (1955); CrR 7.8(c)(1).
When fraud is the ground to set aside a judgment, the fraud must be shown by clear and convincing evidence. State v. Scott, 101 Wash. 199, 206, 172 P. 234 (1918); Lindgren v. Lindgren, 58 Wash.App. 588, 596, 794 P.2d 526 (1990), review denied, 116 Wash.2d 1009, 805 P.2d 813 (1991); Peoples State Bank v. Hickey, 55 Wash.App. 367, 372, 777 P.2d 1056, review denied, 113 Wash.2d 1029, 784 P.2d 530 (1989). If the affidavits raise the issue of fraud, it is error to vacate the judgment without first hearing and weighing testimony concerning the alleged fraud, and entering appropriate findings on the elements of fraud. Marriage of Maddix, 41 Wash.App. 248, 251-52, 703 P.2d 1062 (1985); CrR 7.8(c)(2).
The State here failed to comply with CrR 7.8. No affidavit accompanied the State's motion. The motion did not even mention fraud. The State first mentioned fraud at the June 30, 1993 hearing. At that hearing, Hardesty made an unsworn statement denying any intentional misconduct, and attempted to explain why he and the State both signed a plea statement containing erroneous information. However, neither side introduced any evidence through sworn testimony or exhibits.
A plea bargain is essentially contractual. Santobello v. New York, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971); State v. Ammons, 105 Wash.2d 175, 184, 713 P.2d 719, amended by 105 Wash.2d 175, 718 P.2d 796, cert. denied, 479 U.S. 930, 107 S.Ct. 398, 93 L.Ed.2d 351 (1986); State v. Hall, 104 Wash.2d 486, 706 P.2d 1074 (1985). Accordingly, where the State asserts fraud to modify a judgment based upon a plea bargain, it must show the traditional elements of fraud.
Traditionally, nine elements of fraud must be proven to rescind a contract: (1) A representation of an existing fact; (2) its materiality; (3) its falsity; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it should be acted on by the other party; (6) the other party's ignorance of its falsity; (7) the other party's reliance on the truth of the representation; (8) the right of the other party to rely upon it; and (9) consequent damage. See Sigman v. Stevens-Norton, Inc., 70 Wash.2d 915, 920, 425 P.2d 891 (1967); Webster v. L. Romano Eng'r Corp., 178 Wash. 118, 120, 34 P.2d 428 (1934). When the State seeks to rescind a plea agreement, and increase a prison sentence, it must show no less.
The State did not produce affidavits, exhibits, or other evidence at the hearing as required by CrR 7.8, and there is no indication the trial court considered the nine elements of fraud. The findings and conclusions as to fraud here are inadequate. The trial court's findings state Hardesty disclosed two prior felonies when he actually had four, and, therefore, he defrauded the trial court. This amounts to finding Hardesty's representation was in error. There are no findings as to Hardesty's knowledge of falsity and intent the State should act upon his statement. There are no findings as to the State's ignorance of the falsity of the statement, or its reliance and right to rely upon Hardesty's statement.[5] Absent any evidence and specific findings on the elements of fraud, the trial court abused its discretion in modifying the original judgment and sentence, and imposing an increased sentence.

CONCLUSION
In the ordinary SRA sentencing proceeding, the double jeopardy clause of the United States Constitution is not violated if a defendant is resentenced, even after the defendant *1089 has fully served the sentence, unless the defendant has an expectation of finality in the sentence. A defendant who defrauds the trial court has no expectation of finality merely because he or she has completed the undeservedly short sentence. However, if the State suspects such fraud, it must meet the requirements of CrR 7.8 and prove each element of fraud by clear and convincing evidence. The trial court must make specific written findings on each element. In this way, we avoid protecting defendants who cheat, while upholding the finality of judgments. The trial court's Amended Judgment and Sentence of July 1, 1993 is vacated.
DURHAM, C.J., and DOLLIVER, SMITH, GUY, JOHNSON, MADSEN, ALEXANDER and SANDERS, JJ., concur.
NOTES
[1] The findings and conclusions were not part of the appellate record. Counsel should note RAP 9.6(b)(1)(E).
[2] Hardesty relies only on the double jeopardy clause of the Fifth Amendment to the U.S. Constitution, which applies to the states by way of the due process clause of the Fourteenth Amendment. Benton v. Maryland, 395 U.S. 784, 794, 89 S.Ct. 2056, 2062, 23 L.Ed.2d 707 (1969). Hardesty has not asserted our state constitutional double jeopardy clause, WASH. CONST. art. I, § 9, is interpreted differently from its federal counterpart, nor has he engaged in the analysis set forth in State v. Gunwall, 106 Wash.2d 54, 720 P.2d 808, 76 A.L.R.4th 517 (1986). In any event, the state clause "is interpreted in the same manner as the federal provision." State v. Pascal, 108 Wash.2d 125, 131 n. 1, 736 P.2d 1065 (1987); State v. Gocken, 127 Wash.2d 95, 107, 896 P.2d 1267 (1995); State v. Cole, 128 Wash.2d 262, 274 n. 7, 906 P.2d 925 (1995).
[3] The plea agreement here provided the sentence may be increased if additional criminal history is discovered. Clerk's Papers at 14. As neither party addressed this provision, we do not address whether such a provision affects the defendant's expectation of finality even where the defendant is free of intentional wrongdoing.
[4] Hardesty also argues the relevance of factors showing an unconstitutional delay in sentencing. See State v. Ellis, 76 Wash.App. 391, 392, 884 P.2d 1360 (1994). If accepted, this argument would confirm the conclusion a served sentence may be increased if obtained by fraud, because the defendant causes any delay or prejudice by his or her fraudulent behavior.
[5] Arguably, the State should not rely on a self-avowed felon's statement of criminal history. Here, the State said it conducted its usual data base check. But no evidence supported this averment. Nor was it explained why the 1991 criminal history stated Hardesty committed a crime in 1982 for which he was sentenced in February 1988.